UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
ARTUR NATAN ZAYTSEV and ANZFS, INC.,    )
    ) Civil Action No.
                      Plaintiffs,    )
    )
     -against-    )
    )
MICHAEL CHOUPAK, ANASTASIA KOROLEVA,    )
INTERMEDIA NET, INC., UNISON TECHNOLOGIES )
INC., VICTORIAN MANAGEMENT, LLC, KEKU,    )
LLC., STANACARD, LTD. and EDUARD    )
ROMANOV,    )
    )
                  Defendants.    )
-------------------------------------------------------------------x

## COMPLAINT

Plaintiffs, ARTUR NATAN ZAYTSEV and ANZFS, INC., by their attorneys,

PATTISON, SAMPSON, GINSBERG & GRIFFIN, P.C., respectfully allege as and for their

Complaint, as follows:

### The Parties

1.  Plaintiff, ARTUR NATAN ZAYTSEV is a resident of the City, County and State of

New York.

2.  Plaintiff, ANZFS, INC., is a corporation incorporated in the State of New York, and

with a principal place of business in the City, County and State of New York.

3.  Plaintiff, ARTUR NATAN ZAYTSEV is, and at all relevant times was, the sole

shareholder of ANZFS, INC.

4.  Plaintiff, ANZFS, INC., is, and at all relevant times was, a provider of financial

consulting services.

5.  At all relevant times, plaintiff ARTUR NATAN ZAYTSEV was the Chief

Financial Officer of STANACARD, LLC, and a minority shareholder of STANACARD, LLC.

6. Defendant MICHAEL CHOUPAK, a/k/a DAVID MICHAEL CHOUPAK is a resident of the United Kingdom, residing at 18 Cranley Place, London.

7. At all relevant times, defendant CHOUPAK declared a residence for federal tax purposes in Moscow, Russia and for state tax purposes in Cupertino, CA.

8. At all relevant times, defendant CHOUPAK declared a residence for voter registration and driver registration purposes in Florida.

9. Defendant, ANASTASIA KOROLEVA, is a resident of the United Kingdom, residing at 18 Cranley Place, London.

10. At all relevant times, defendant KOROLEVA declared a residence for federal tax purposes in Moscow, Russia and for state tax and driver registration purposes in Cupertino, CA.

11. Defendant, INTERMEDIA NET, INC., is a corporation incorporated under the laws of Delaware with its principal place of business in New York, and offices in Sunnyvale, CA, New York, NY, London, UK and St. Petersburg, Russia. Defendant, INTERMEDIA NET, INC., is a successor by merger to INTERMEDIA DE, INC., INTERMEDIA MN, INC., INTERMEDIA, INC. and INTERMEDIA NET, LLC.

12. Defendant, UNISON TECHNOLOGIES, INC., is a corporation incorporated under the laws of Delaware with its principal place of business in the City, County and State of New York, and a successor to UNISON TECHNOLOGIES, LLC.

13. Defendant, VICTORIAN MANAGEMENT, LLC is a limited liability company formed under and by virtue of the laws of the State of Delaware, with a principal place of business in the City, County and State of New York.

14. Defendant, KEKU, LLC., is incorporated in the State of Delaware, with a principal

2

place of business in the City, County and State of New York.

15. Defendant, KEKU, LLC., is an alter ego of STANACARD, LLC, insofar as the two entities serve the same corporate purposes; commingle expenses and revenue payments; utilize a common merchant processing / credit card system; share physical offices, employees and equipment; have common shareholders, officers and directors; share a customer database; and utilize the same technology, the software programming for which was written by former Chief Technology Officer, Aleksandr Palatkevich.

16. Defendant, KEKU, LLC, is a successor entity to STANACARD, LLC and STANAPHONE, LLC. The latter company began life as a Delaware Shelf Corporation in 2004, and was then transformed into an active entity in 2005.

17. Defendant, STANACARD, LTD., is a corporation incorporated under the Companies Act(s) of 1985 and 2006 in the United Kingdom, City of London, with offices situated in England and Wales.

18. At all relevant times, defendant MICHAEL CHOUPAK was the majority shareholder of both STANACARD, LLC and STANACARD, LTD.

19. At all relevant times, defendant MICHAEL CHOUPAK was the managing member of STANACARD, LLC and STANACARD, LTD.

20. At all relevant times, defendant MICHAEL CHOUPAK was the majority owner of INTERMEDIA NET, INC. and its predecessors, INTERMEDIA NET, LLC, INTERMEDIA DE, INC., INTERMEDIA MN, INC. and INTERMEDIA, INC.

21. At all relevant times, defendant MICHAEL CHOUPAK was the majority owner of UNISON TECHNOLOGIES, INC. and its predecessor, UNISON TECHNOLOGIES, LLC.

22. At all relevant times, defendant MICHAEL CHOUPAK was the sole owner of

VICTORIAN MANAGEMENT, LLC.

23. At all relevant times, defendants MICHAEL CHOUPAK and ANASTASIA KOROLEVA were shareholders and managing members of KEKU, LLC.

24. At the present time, defendant ANASTASIA KOROLEVA is a shareholder and managing member of STANACARD, LLC.

25. At the present time, all of STANACARD, LLC's assets have been transferred to KEKU, LLC, including accounts receivable, credit card deposits, bank accounts and regular cash flows.

26. At all relevant times, defendant MICHAEL CHOUPAK made no individual capital contributions to STANACARD, LLC.

27. Defendant, ANASTASIA KOROLEVA, is an attorney duly licensed to practice law in the State of New York.

28. From the fall of 2008 to October 31, 2011 defendant ANASTASIA KOROLEVA, was the Chief Executive Officer of STANACARD, LLC and KEKU, LLC. Her employment contract with STANACARD, LLC was signed on or about November 1, 2009. She remains Chairwoman and Shareholder of both STANACARD, LLC and KEKU, LLC.

29. At all relevant times, defendant ANASTASIA KOROLEVA made no capital contributions to STANACARD, LLC or KEKU, LLC.

30. At all relevant times, defendant ANASTASIA KOROLEVA was an employee and/or officer of INTERMEDIA NET, INC. She was "*Vice President, Legal*" of INTERMEDIA NET, INC. from January 2005 until she became Chief Executive Officer of STANACARD, LLC in October or November 2008.

31. At all relevant times, defendant ANASTASIA KOROLEVA was an employee and/or

officer of VICTORIAN MANAGEMENT, LLC.

32. Defendant, ANASTASIA KOROLEVA, is presently a shareholder and managing member of STANACARD, LLC. Upon information and belief, defendant MICHAEL CHOUPAK has recently transferred his ownership interest in STANACARD, LLC to his wife, ANASTASIA KOROLEVA.

33. Defendant, EDUARD ROMANOV, is a resident of the City, County and State of New York.

34. At all relevant times, defendant EDUARD ROMANOV was a minority shareholder of STANACARD, LLC.

35. At all relevant times, defendant EDUARD ROMANOV was an employee and/or officer of STANACARD, LLC.

36. At all relevant times, defendant EDUARD ROMANOV made no individual capital contributions to STANACARD, LLC.

37. At all relevant times, defendant MICHAEL CHOUPAK described himself as a "serial entrepreneur" of technology and media companies, and continues to do so.

38. At all relevant times, and for accounting and other purposes, the funds of the entities known as STANACARD, LLC, INTERMEDIA NET, INC., UNISON TECHNOLOGIES, INC., STANACARD, LTD. and VICTORIAN MANAGEMENT, LLC were intermingled and commingled, upon the direction of defendant, MICHAEL CHOUPAK.

39.  At all relevant times, as majority shareholder and sole managing member or director, defendant MICHAEL CHOUPAK was fully responsible for supervising, directing and managing the business and financial affairs of the various entities that he controlled.

40.  At all relevant times, defendant MICHAEL CHOUPAK did perform such supervisory, directorial and managerial duties.

41.  At all relevant times, defendant MICHAEL CHOUPAK directed the movement of monies from, to and between the various entities that he controlled.

42.  Said transfers of funds, at MICHAEL CHOUPAK's direction, constituted commingling in violation of state and federal law.

43.  Such commingling violated the regulations of both the Internal Revenue Service and the New York State Division of Taxation, and therefore, exposed the entities to redesignation as a unified sole proprietorship or general partnership.

44.  At all relevant times, defendant MICHAEL CHOUPAK never authorized dividend distributions to any minority shareholders of STANACARD, LLC, INTERMEDIA NET, INC., STANACARD, LTD. or UNISON TECHNOLOGIES, INC., or their predecessor entities.

45.  By virtue of the commingling as aforesaid, the entities known as STANACARD, LLC, INTERMEDIA NET, INC., STANACARD, LTD, UNISON TECHNOLOGIES, INC. and VICTORIAN MANAGEMENT, LLC, were united in interest, and are subject to a piercing of their limited liability / corporate veil.

## Statement of Reasons for Omitting a Party

46. This Complaint does not join STANACARD, LLC as a party, insofar as predecessor counsel for plaintiff ARTUR NATAN ZAYTSEV previously filed a Summons and Complaint against STANACARD, LLC in the Supreme Court of the State of New York, County of New York, bearing Index # 651030/2010, which action remains pending.

47. Therefore, STANACARD, LLC, cannot be named as a party to this Federal Action

until the Court directs and orders that the entity so appear, and authorizes the filing of an

Amended Complaint joining all necessary parties.

## Statement of Jurisdiction and Venue

48. The amount in controversy, without interest and costs, exceeds the sum or value

specified by 28 U.S.C. §1332.

49. This action arises, in part, under the United States Constitution, Article 1, Section 8.

50. Venue is proper in this court under 28 U.S.C. §1391, et seq.

51. Venue is proper in this court under 18 U.S.C. §1962(a)-(d).

## As and For a First Cause of Action

### BREACH OF CONTRACT – AGAINST ALL DEFENDANTS

52. Plaintiffs repeat, reiterate and reallege each and every allegation contained in

paragraphs "1" through "51," with the same force and effect as if set forth at length herein.

53. On or about December 30, 2007 plaintiff ARTUR NATAN ZAYTSEV accepted an

offer from defendant MICHAEL CHOUPAK to become Chief Financial Officer of

STANACARD, LLC. He had previously (beginning approximately September 2007) worked for

defendant MICHAEL CHOUPAK on a STANACARD "project," which was then wholly-owned

by INTERMEDIA NET, LLC. He was paid by STANACARD, LLC, and also UNISON

TECHNOLOGIES, INC. and VICTORIAN MANAGEMENT, LLC

54. Plaintiffs' compensation for said work was to include both a salary, payable to

ANZFS, INC., and a minority (10%) share in STANACARD, LLC to plaintiff ARTUR NATAN
ZAYTSEV, with the minority ownership stake being a significant inducement / factor in the
acceptance of the position.

    55. Plaintiff ARTUR NATAN ZAYTSEV accepted the STANACARD position both in
his individual capacity, and in his capacity as CEO and Sole Shareholder of ANZFS, INC. Prior
to joining STANACARD, LLC, plaintiff obtained degrees in math, economics and accounting,
worked as a software engineer for IBM Corp., and performed financial consultancy and
modeling work for various financial services firms, including Deloitte and Touche and Merrill
Lynch, where he held the position of Controller. He also developed online banking software for
Wachovia Bank and developed online cellphone configuration software for Sprint PCS.

    56. Defendant MICHAEL CHOUPAK was acting in his capacity as CEO and Majority
Shareholder of INTERMEDIA NET, LLC, when he hired plaintiffs to work for INTERMEDIA
NET on the STANACARD project.

    57. Prior to July 1, 2006 the project that became STANACARD was known as
"STANAPHONE." In the summer of 2006, defendant MICHAEL CHOUPAK directed that the
STANAPHONE and STANACARD projects be "transferred" to UNISON TECHNOLOGIES,
INC.  STANACARD remained a project of INTERMEDIA NET, INC. and UNISON
TECHNOLOGIES, INC., up until March 20, 2007, at which time a Certificate of Incorporation
as a Limited Liability Company was filed in Delaware, listing MICHAEL CHOUPAK as
Majority and Managing Member, and ALEKSANDR PALATKEVICH and EDUARD
ROMANOV as Minority Equity Members. The LLC Agreement of STANACARD, LLC states
that any disputes concerning the agreement are to be resolved pursuant to the laws of the State of
Delaware.

58. During the discussions with plaintiff ZAYTSEV leading up to his hiring, defendant MICHAEL CHOUPAK declared STANAPHONE / STANACARD to be a failure, and that he was planning on shutting it down unless plaintiffs, Chief Technology Officer Aleksandr Palatkevich and defendant EDUARD ROMANOV could find a way to make the telephony concern profitable.

59. The stated business purpose of STANACARD was to allow telephone users to place international calls at low rates, employing internet-based telephony.

60. Upon his initial hiring, plaintiff ZAYTSEV was charged with the responsibility of separating the financial affairs of STANACARD, LLC from those of INTERMEDIA NET, INC. Said duties were logistically completed in December 2007.

.    61. On or about December 27, 2007, plaintiff ZAYTSEV circulated an email to key employees and officers at STANACARD and INTERMEDIA NET, INC., thanking them for participating in the separation project. Following said completion, however, defendant MICHAEL CHOUPAK routinely directed that the assets of the entities be re-mingled, intermingled and commingled, as he (CHOUPAK) deemed necessary. Such commingling extended to the other "Choupak entities," i.e., VICTORIAN MANAGEMENT, LLC, KEKU, LLC and UNISON TECHNOLOGIES, INC.

62. Following said December 27, 2007 correspondence, defendant MICHAEL CHOUPAK requested that ARTUR NATAN ZAYTSEV meet with him to discuss a permanent position with STANACARD, LLC. Said meeting was held at the Carnegie Club, at which time defendant CHOUPAK offered plaintiff a 10% ownership interest in STANACARD, LLC in addition to salary, and further requested that ZAYTSEV remain Chief Financial Officer of STANACARD, LLC. Plaintiff accepted said offer.

63. Pursuant to the agreement between plaintiffs and defendant CHOUPAK, the salary portion of the compensation package was to be paid to ANZFS, INC., and distributed from that entity to plaintiff ZAYTSEV.

64. Pursuant to the agreement between plaintiffs and defendant CHOUPAK, the minority ownership of ten percent of STANACARD, LLC was due to vest immediately, i.e., in December 2007/ January 2008.

65. INTERMEDIA NET, LLC, INTERMEDIA DE, INC. and INTERMEDIA MN, INC. were transformed into INTERMEDIA NET, INC., upon the filing of a Certificate of Incorporation in Delaware on or about January 8, 2008.

66. On or about March 18, 2008, defendants MICHAEL CHOUPAK and EDUARD ROMANOV assigned a patent to STANACARD, LLC., bearing U.S. Patent Office identification number 7,346,156 and entitled "Methods and Apparatuses for Placing a Telephone Call." Defendant STANACARD, LLC became the owner of the patent, effective March 18, 2008.

67. From September, 2007 through November 20, 2009 plaintiffs worked full-time at STANACARD, LLC, employing plaintiff ZAYTSEV's knowledge, experience and expertise; providing financial consulting services for STANACARD, LLC and the other entities owned, managed and controlled by defendant MICHAEL CHOUPAK; utilizing and exploiting plaintiffs' (prior) connections and professional relationships; working excessive hours (i.e., 24/7), and performing personal and individual financial services for defendants CHOUPAK and his wife, defendant ANASTASIA KOROLEVA. Plaintiff ARTUR NATAN ZAYTSEV, in his individual capacity and as owner of ANZFS, INC., also created and authored certain financial modeling systems designed to monitor, assess and improve company performance.

68. In addition to being incentive compensation, plaintiff's 10% ownership interest was designed to compensate him for the unusual effort, time and dedication expended in furtherance of STANACARD, LLC's financial stability, as well as the use of plaintiff ZAYTSEV's outstanding credit score in order to use it to establish company credit cards, for which plaintiff ZAYTSEV was personally liable. Moreover, plaintiff agreed to expend all of his knowledge, skill, expertise and prior accomplishments and connections towards the success of the STANACARD venture.

69. As a result of the aforesaid contributions of plaintiffs, the STANACARD system obtained a steady cash flow basis, via regular credit card deposits from customers, with a client database of approximately 220,000 subscribers. Monthly revenues increased dramatically as a result of plaintiffs' contributions.

70. Prior to plaintiffs' contributions, there were no books, records and accounts dedicated specifically and exclusively to STANACARD, LLC. The cash flow, profit and expense streams were noted within the corporate books, records and accounts of INTERMEDIA NET, INC. This permitted defendants to hide the true performance of STANACARD, and wrongly attribute the company's revenue stream to the other CHOUPAK entities. Customer credit card payments for telephony services provided by STANACARD, for instance, were attributed to INTERMEDIA.

71. In his capacity as Chief Financial Officer, plaintiff (a) developed criteria and implemented mechanisms for GAAP revenue recognition and marketing cost recognition that enabled the company officers, directors and others to understand STANACARD's financial performance; (b) allocated costs of shared expenses between INTERMEDIA NET, INC. and STANACARD, LLC; (c) analyzed the revenue stream and correctly allocated it to STANACARD, LLC rather than it being booked to INTERMEDIA; (d) developed and

implemented control mechanisms to prevent revenue leakage and company asset misappropriation, (e) established company lines of credit; (f) renegotiated contracts with the company's merchant banking partners, thereby reducing the cost of credit card processing; (g) developed financial analysis software that enabled him to tune-up company performance in order to maximize profitability; (h) using software he developed, tracked the customer data, revenue and pricing fluctuations of STANACARD and its key competitors, so as to make timely fee adjustments that would prevent the company from losing market share; (i) created controls and a compliance framework that enabled the company to safeguard company's assets and meet all regulatory requirements from the Federal Communications Commission and other agencies; and (j) converted manual processes to an automated system, thereby reducing the baseline operational costs, among other duties. These duties, and in fact all duties, were routinely and regularly reported to, and supervised by, defendants MICHAEL CHOUPAK and ANASTASIA KOROLEVA.

72. From December 2007 until his termination, plaintiff ARTUR NATAN ZAYTSEV always identified himself as Chief Financial Officer of STANACARD, LLC on interoffice e-mails and reports, and on e-mail and other correspondence to vendors, customers, and employees of the other CHOUPAK entities. Moreover, plaintiff ZAYTSEV was identified as Chief Financial Officer of STANACARD, LLC on filings with the Federal Communications Commission and tax authorities, as well as documents prepared for, and by, various financial institutions, including JPMorgan Chase Bank, N.A., Dun and Bradstreet and American Express. Defendants, and each of them, were fully aware of plaintiff's position as Chief Financial Officer, and of his identification as such on official company documents. Plaintiff ZAYTSEV also

participated in regular member meetings, and further, defendant CHOUPAK on various

occasions introduced ZAYTSEV to others as a member of the company.

73. In an Affidavit dated November 12, 2010 and submitted to the Supreme Court of the

State of New York, County of New York, defendant CHOUPAK stated that, "Mr. Zaytsev had

never been employed by, let alone the chief financial officer of Stanacard…Mr. Zaytsev was, at

some point in time, the chief financial officer of Unison Technologies, Inc., an affiliate of

Stanacard. He also rendered some services to Stanacard – through his wholly owned company,

ANZFS, INC. – but has never been the CFO of Stanacard, albeit he may have held himself out as

one. Simply put, everybody at Stanacard knew that he was my friend of many years, and he used

this knowledge to abuse my trust." Said statements were false. Indeed, plaintiffs are in

possession of more than 900 emails between the plaintiff and defendant CHOUPAK, wherein

Mr. Zaytsev is clearly identified as the Chief Financial Officer of STANACARD, LLC.

74. From December 2007 through November 20, 2009 plaintiff received a salary of

approximately $3,000.00 per week, which salary was paid by STANACARD via ACH transfers

to ANZFS, INC. When plaintiff was later assigned additional work on behalf of UNISON

TECHNOLOGIES, INC. and VICTORIAN MANAGEMENT, LLC, additional salary was paid

by those entities.

75. In the summer of 2008, defendant MICHAEL CHOUPAK hired a General Counsel

for his various entities, named Daniel Ralls. Mr. Ralls served as General Counsel for

STANACARD, LLC, INTERMEDIA NET, INC., UNISON TECHNOLOGIES, INC. and

VICTORIAN MANAGEMENT, LLC. It is unknown whether Ralls ever performed any legal

services for KEKU, LLC. Upon information and belief, Mr. Ralls' salary was paid by

INTERMEDIA NET, INC., then VICTORIAN MANAGEMENT, LLC, and then again by
INTERMEDIA NET, INC.

76.  Throughout the course of his employment, General Counsel Daniel Ralls referred to
plaintiff ARTUR NATAN ZAYTSEV as Chief Financial Officer of STANACARD,

77. On or about December 29, 2008, Mr. Ralls presented  plaintiff ZAYTSEV with a
series of documents for his signature, including a revised STANACARD, LLC limited liability
company agreement; a Joinder to the LLC agreement listing ZAYTSEV as a ten percent (10%)
owner of the company; individual (and backdated) non-disclosure, non-compete and intellectual
property agreements and entity-related non-disclosure, non-compete and intellectual property
agreements. Plaintiff executed said agreements, in accordance with his agreement with defendant
MICHAEL CHOUPAK, and upon the direction of Mr. Ralls and defendant ANASTASIA
KOROLEVA, who was then Chief Executive Officer of STANACARD, LLC.

78. Plaintiff ZAYTSEV received a K-1 Partner's Share of Income Statement from
STANACARD, LLC for 2008, which he filed with his tax returns. Upon information and belief,
a duplicate K-1 was efiled by STANACARD, LLC, but was later withdrawn and a Restated 2008
return was filed in 2010.

79. On or about April 14, 2009, June 2, 2009 and June 17, 2009 STANACARD, LLC
received Permanent Injunctions against Lets 101, Jaxtr, Inc. and Global Telelinks, Inc., enforcing
the aforesaid Patent; thereafter, licensure agreements with those entities were negotiated and
signed.

80. In the summer and fall of 2009, defendant CHOUPAK, and defendant KOROLEVA,

represented and insisted that STANACARD, LLC was losing both revenue and market share, and was nearly bankrupt, which claims were false. Defendants CHOUPAK and KOROLEVA knew that such claims were false at the time they were made.

81. On or about November 20, 2009 plaintiffs were terminated, by means of an e-mail from defendant MICHAEL CHOUPAK, bearing the caption, "We're parting ways at work." At the time, as CHOUPAK knew, plaintiff ZAYTSEV was expecting the birth of his first child, and was fully dependent on the salary provided for his services to STANACARD, LLC and the other CHOUPAK entities. Said termination was without just cause, and without severance, and was done maliciously, with intent to harm plaintiff, his family, his business and prospects, and his property.

82. At the time of said termination, STANACARD, LLC had yearly revenue in excess of $10,000,000.00 (Ten Million Dollars). Such revenue was attributable to the efforts of plaintiffs, as well as Chief Technology Officer, Aleksandr Palatkevich.

83. Plaintiffs ARTUR NATAN ZAYTSEV and ANZFS, INC. satisfied all conditions and obligations, and otherwise fully performed, under the original agreement between the parties.

84. Despite said satisfaction, defendants MICHAEL CHOUPAK and ANASTASIA KOROLEVA took steps to remove plaintiff ARTUR NATAN ZAYTSEV as a Member of STANACARD, LLC, and reassign his shares to themselves. Defendant KOROLEVA, with defendant CHOUPAK's knowledge and consent, personally, and in writing, authorized ZAYTSEV's execution of the Joinder to the STANACARD, LLC AGREEMENT on January 9, 2009. In a written communication dated March 17, 2008, plaintiff ZAYTSEV confirmed with defendant CHOUPAK that the ownership structure of STANACARD, LLC was 70% CHOUPAK, 10% ROMANOV, 10% PALATKEVICH and 10% ZAYTSEV. Not until April,

15

2010, however, did defendants, including KOROLEVA and CHOUPAK, contend that ZAYTSEV was never given a membership interest in the company.

85. Following the termination of plaintiffs' employment, defendants CHOUPAK, KOROLEVA and ROMANOV sought to deny the fact that plaintiff ZAYTSEV was ever Chief Financial Officer of STANACARD, LLC and, further, denied – for the first time – that ZAYTSEV was ever awarded an ownership interest in STANACARD, LLC. Said denials were made willfully, maliciously, with intent to harm plaintiffs, their reputation and their future business prospects.

86. Said actions constituted a breach of the agreement between the parties.

87. Defendants, and each of them, breached their contract with plaintiffs.

88. As a direct and proximate result of Defendants' wrongful breach of their agreement(s) with plaintiffs, plaintiffs ARTUR NATAN ZAYTSEV and ANZFS, INC., were damaged in their business and property.

89. By reason of said breach, plaintiffs were damaged in a sum to be determined by a jury herein, but exceeding the sum of Twenty-Five Million ($25,000,000.00) Dollars. Accordingly, plaintiffs are entitled to an amount to be determined at trial, together with costs, interest, attorneys' fees and punitive damages in an amount to be determined at trial.

### As and For a Second Cause of Action

**BREACH OF FIDUCIARY DUTY – AGAINST DEFENDANTS CHOUPAK
AND KOROLEVA ONLY**

90. Plaintiff ARTUR NATAN ZAYTSEV repeats, reiterates and realleges each and

every allegation contained in paragraphs "1" through "89," with the same force and effect as if set forth at length herein.

91. At all relevant times, defendant MICHAEL CHOUPAK, as majority shareholder of STANACARD, LLC, and ANASTASIA KOROLEVA, as Officer and Director of the company, owed a fiduciary duty of good faith, reasonableness in management, action and decision-making, and fair dealing to their fellow officers and (minority) shareholders, including ARTUR NATAN ZAYTSEV.

92. Defendants MICHAEL CHOUPAK and ANASTASIA KOROLEVA breached said fiduciary duty by wrongfully transferring intellectual property assets of plaintiff and STANACARD, LLC to other entities in which CHOUPAK was majority shareholder, thereby diluting the value of such assets, and plaintiff's individual interest in same.

93. Defendants MICHAEL CHOUPAK and ANASTASIA KOROLEVA breached said fiduciary duty by wrongfully converting revenue streams owned by STANACARD, LLC, and transferring said assets to other entities in which CHOUPAK was majority shareholder, including defendants INTERMEDIA NET, INC., UNISON TECHNOLOGIES, INC., VICTORIAN MANAGEMENT, LLC, and KEKU, LLC, thereby diluting and diminishing plaintiff's individual interests.

94. Defendants MICHAEL CHOUPAK and ANASTASIA KOROLEVA breached said fiduciary duty by wrongfully insisting that STANACARD, LLC pay expenses of the other entities in which CHOUPAK held a majority interest, without there being any benefit or consideration given to STANACARD, LLC or its minority shareholders for same, thereby diluting plaintiff's investment.

95. Defendants MICHAEL CHOUPAK and ANASTASIA KOROLEVA breached said

fiduciary duty by authorizing a transfer of STANACARD, LLC's shares, licenses, patents, and other assets to KEKU, LLC, following the filing of the State Court actions by plaintiffs ARTUR ZAYTSEV, CONSTANTIN FILIN, and ALEKSANDR PALATKEVICH.

96. Defendants, MICHAEL CHOUPAK and ANASTASIA KOROLEVA, breached said fiduciary duty by diverting significant monetary assets of STANACARD, LLC to legal counsel in the matter of Stanacard v. Rebtel, and Stanacard v. Jaxtr, et al, despite the fact that the patent infringement lawsuits were unlikely to result in any substantial monetary recovery. Further, upon the settlement of those actions, defendant CHOUPAK converted the totality of said payments, including that portion of same which was properly owed to plaintiff.

97. Defendants, MICHAEL CHOUPAK and ANASTASIA KOROLEVA, breached said fiduciary duty by diverting significant monetary assets of STANACARD, LLC for his own personal use, thereby depriving the Company of the use of same, and hence, diluting and diminishing plaintiff ZAYTSEV's investment and depriving plaintiff ZAYTSEV of anticipated dividend distributions.

106. Defendants, MICHAEL CHOUPAK and ANASTASIA KOROLEVA breached said fiduciary duty by securing, tendering and proffering, a fraudulent valuation (from MFA Cornerstone Consulting) that grossly undervalued plaintiff ZAYTSEV's ownership interest in STANACARD, LLC.

107.  These actions by defendants MICHAEL CHOUPAK and ANASTASIA KOROLEVA, as aforesaid, constituted both a breach of fiduciary duty and gross mismanagement, rising to the level of minority oppression. These actions were calculated to increase the value of their ownership and executive holdings in INTERMEDIA NET, INC., STANACARD, LTD., UNISON TECHNOLOGIES, INC., KEKU, LLC and VICTORIAN

MANAGEMENT, LLC, to the detriment of STANACARD, LLC and its minority shareholders, including plaintiff ARTUR NATAN ZAYTSEV.

108.  As a result of said breaches of fiduciary duty, plaintiffs were damaged in their business and property.

109.  Said breaches of fiduciary duty occurred without the concurrence or agreement of plaintiff ARTUR NATAN ZAYTSEV or his company, ANZFS, INC.

110.  As a result of the breach of fiduciary duty by defendants, plaintiffs have been damaged in the sum of Twenty-Five Million ($25,000,000.00) Dollars, and demand judgment for such sum or any lesser sum as may be determined by a jury, together with interest, costs, disbursements, attorneys' fees, and any other and further relief as the court and jury may deem just.

<u>**As and For a Third Cause of Action**</u>

**MINORITY SHAREHOLDER OPPRESSION AND FREEZE-OUT
ON BEHALF OF PLAINTIFF ALIK PALATKEVICH
AGAINST DEFENDANTS CHOPAK, KOROLEVA and ROMANOV ONLY**

111.   Plaintiff ARTUR NATAN ZAYTSEV repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "110" with the same force and effect as if set forth at length herein.

112.  Plaintiff ARTUR NATAN ZAYTSEV was and is a minority shareholder (10%) in STANACARD, LLC.

113.  Majority shareholders in a closely held corporation owe a fiduciary duty to minority shareholders not to engage in oppressive actions towards them. Minority shareholder oppression is deemed to arise when the majority conduct substantially defeats expectations that,

objectively viewed, were both reasonable under the circumstances and were central to a shareholder's decision to join the venture.

114.  By virtue of his aforementioned conduct, as more fully set forth above, the Individual Defendant MICHAEL CHOUPAK, as majority shareholder of STANACARD, LLC, oppressed ARTUR NATAN ZAYTSEV. Moreover, defendants MICHAEL CHOUPAK and ANASTASIA KOROLEVA joined together to freeze ARTUR NATAN ZAYTSEV out of the company, STANACARD, LLC. Upon information and belief, defendant EDUARD ROMANOV acquiesced in these oppressive actions, and profited financially from them.

115.  By virtue of his aforementioned conduct, as more fully set forth above, the Individual Defendant MICHAEL CHOUPAK, as majority shareholder of UNISON TECHNOLOGIES, INC., oppressed ARTUR NATAN ZAYTSEV, with the cooperation, assistance and help of defendants ANASTASIA KOROLEVA and EDUARD ROMANOV.

116.  By virtue of the aforementioned conduct, as more fully set forth above, the Individual Defendants MICHAEL CHOUPAK, ANASTASIA KOROLEVA and EDUARD ROMANOV, oppressed ARTUR NATAN ZAYTSEV.

117.  As a direct and proximate result of said defendants' wrongful oppression of ARTUR NATAN ZAYTSEV, said plaintiff has been, and continues to be, damaged in his business and property.

118.  The actions of said defendants in oppressing plaintiff ARTUR NATAN ZAYTSEV are extreme and outrageous, were undertaken maliciously, deliberately, and with willful intent to cause harm to ZAYTSEV and ZAYTSEV is therefore entitled to punitive damages against defendant MICHAEL CHOUPAK and the other entities he controlled, which entities benefitted from his actions, namely, STANACARD, LTD, INTERMEDIA NET, INC,

UNISON TECHNOLOGIES, INC, KEKU, LLC. and VICTORIAN MANAGEMENT, LLC, as well as the other individual defendants, ANASTASIA KOROLEVA and EDWARD ROMANOV. With respect to this count's pleadings for damages, it is alleged that the assets of the defendant entities must be pierced, and merged with defendant CHOUPAK's assets, due to the fact that the commingling of funds as set forth above rendered all such assets the equivalent of a joint sole proprietorship. The court is respectfully asked to pierce the corporate / limited liability veil.

119.    By virtue of the foregoing, plaintiff ARTUR NATAN ZAYTSEV is entitled to a money judgment against defendants MICHAEL CHOUPAK, STANACARD, LTD., INTERMEDIA NET, INC., UNISON TECHNOLOGIES, INC., KEKU, LLC and VICTORIAN MANAGEMENT, LLC in an amount to be determined at trial but not less than Twenty-Five Million ($25,000,000.00) Dollars in compensatory damages, together with costs, interest, attorneys' fees, and punitive damages in an amount to be determined at trial.

## As and For a Fourth Cause of Action

### FRAUDULENT CONVEYANCE - AGAINST DEFENDANTS CHOUPAK, KOROLEVA, ROMANOV and KEKU, LLC

120.    Plaintiff ARTUR NATAN ZAYTSEV repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "119" with the same force and effect as if set forth at length herein.

121.    When plaintiff ARTUR NATAN ZAYTSEV was terminated from his position as an officer of the company, he did not resign as a shareholder of the company, or otherwise dispose of his shares. He was not given an opportunity to sell his shares for an adequate or fair valuation.

122.    Following plaintiff's termination, defendant MICHAEL CHOUPAK unilaterally amended the capitalization structure of the company, so as to hold 80 percent of the shares, with defendant EDUARD ROMANOV holding 10 percent of the shares and Aleksandr Palatkevich holding 10 percent of the shares. Plaintiff's ownership interest was extinguished as a result, and he was not notified of the amendment, either before or within a reasonable time after it occurred. MICHAEL CHOUPAK later removed Aleksandr Palatkevich as a Member of the Company, at which time CHOUPAK claimed 88.88 percent of the shares and ROMANOV 11.11 percent of the shares.

123.    Said conveyance was made without any compensation or other consideration to plaintiff for the shares taken from him, and reassigned to CHOUPAK and ROMANOV.

124.    The aforesaid conveyances were fraudulent, and in contravention of both the written agreement between the parties and the Amended and Restated LLC Agreement dated August 12, 2010.

125.    On or about October 23. 2010 defendant MICHAEL CHOUPAK assigned half of his ownership interest to his wife, ANASTASIA KOROLEVA, so that each held 44.44 percent of the STANACARD, LLC shares.

126.    Defendant ANASTASIA KOROLEVA paid no consideration for said shares.

127.    The aforesaid conveyance was fraudulent (pursuant to New York State Debtor and Creditor Law §273-a), and designed to shield defendant CHOUPAK's assets from judgment in the matter of *Artur Zaytsev v Stanacard, LLC and Michael Choupak*, which was filed in Supreme Court, New York County on July 20, 2010 and served on August 25, 2010 and any other forthcoming lawsuits, including the subject action.

128.    On May 19, 2011, a Summons and Complaint was filed in Supreme Court, New York County captioned *Aleksandr Palatkevich v. Stanacard, LLC and MICHAEL CHOUPAK,* and bearing index number 651358/2011.

129.    On or about June 21, 2011, defendant MICHAEL CHOUPAK assigned his remaining 44.44 percent interest in STANACARD, LLC to his wife, ANASTASIA KOROLEVA.

130.    Defendant ANASTASIA KOROLEVA paid no consideration for said shares.

131.    Said conveyance was fraudulent pursuant to New York State General Obligations Law §273-a, and was designed to shield defendant MICHAEL CHOUPAK's assets from any judgment secured by plaintiff in the pending legal matter(s)

132.    Beginning in August 2010, defendants CHOUPAK and KOROLEVA began transferring certain assets of STANACARD, LLC to KEKU, LLC and following the filing of a Certificate of Incorporation in October 2010, to KEKU, INC.

133.    Said conveyances were fraudulent pursuant to New York State General Obligations Law §273-a, and designed to shield the assets of STANACARD, LLC from execution, should plaintiff ZAYTSEV obtain a judgment in his action against said company defendant.

134.    Plaintiff, ARTUR NATAN ZAYTSEV has been damaged by reason of said fraudulent conveyances

135.    On the basis of the foregoing, and upon the evidence, plaintiff ARTUR NATAN ZAYTSEV seeks judgment (a) in the sum of Twenty-Five Million Dollars ($25,000,000.00) in compensatory damages, (b) punitive damages in a sum to be determined by a jury; and (c) a declaration that the conveyances described above be set aside, rendered void and that any

judgment granted be made a lien upon the property, together with interest, costs, disbursements, and attorneys fees,  together with such other and further relief as this Court deems just and proper.

## As and For a Fifth Cause of Action

### FRAUD - AGAINST ALL DEFENDANTS

136.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "135" herein, with the same force and effect as if set forth at length herein.

137.  Defendants MICHAEL CHOUPAK, EDWARD ROMANOV, ANASTASIA KOROLEVA and INTERMEDIA NET, INC, and each of them, made certain representations to plaintiffs, to wit: that they would compensate plaintiffs for their contributions to STANACARD, LLC and its affiliates, with salary and, in the case of plaintiff ZAYTSEV, with a minority share in the ownership of the company. Plaintiff relied upon said representations, to his detriment.

138. Said representations were knowingly false, defendants having had no intention of ever permitting plaintiff ZAYTSEV to realize or actualize any material financial benefit from ownership of the company. The misrepresentations of defendants constituted fraud.

139.  Based upon such representations, plaintiffs agreed to become employed by STANACARD, LLC and, in Mr. Zaytsev's case, to serve as Chief Financial Officer of the company. He was induced by said representations to expend excessive hours, for which he was not compensated, developing financial modeling programs for STANACARD, LLC, without remuneration or formal licensure; and to expend enormous amounts of time, energy, knowledge, skill, and physical, intellectual and other resources so as to build and sustain STANACARD's

customer base and financial stability/profitability. Moreover, he was induced to put his personal creditworthiness on the line in order to allow defendants access to credit card lines that they would not otherwise have had access to. Finally, he was induced to perform uncompensated services to defendant INTERMEDIA NET, INC., based upon defendant CHOUPAK's request that ZAYTSEV, as a member of STANACARD, owed a duty of loyalty to a sister entity.  He relied on defendants' representations to his detriment.

140.    Defendants received tremendous material benefits from such fraud, specifically, uncompensated labor from plaintiffs; and use of plaintiff ZAYTSEV's credit history for their own personal exploitation. Moreover, plaintiff's unjustified termination and freeze-out were conducted by defendants so as to pave the way for STANACARD, LLC's revenue stream to be relocated to INTERMEDIA NET, INC., creating false and fraudulent profit streams for the latter company, which streams were used to enhance INTERMEDIA NET's marketability, leading to its ultimate sale.

141.    For purposes of this claim, and by virtue of the commingling of assets of all defendants, it is demanded that the corporate / limited liability veil of the defendant entities be pierced.

142.    Plaintiffs respectfully demand disgorgement of the profits which they derived from their fraud, compensatory damages in the sum of One Hundred Fifty Million ($150,000,000.00) Dollars, together with punitive damages in a sum to be set by the Jury upon a trial of this matter; interest, costs, disbursements, attorneys' fees, and such other and further relief as the Court deems just and proper.


## As and For a Sixth Cause of Action

## CIVIL RICO (Mail Fraud) AGAINST ALL DEFENDANTS

143.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "142" with the same force and effect as if set forth at length herein.

144.    Defendants, and each of them, devised or intended to devise a scheme or artifice to defraud Plaintiffs and in doing so, used the U.S. Mail, Fedex and other private or commercial interstate carriers to (a) induce plaintiff to sign a Joinder to the STANACARD, LLC Agreement by stating that he was being given a ten-percent ownership interest in the company, when defendants had no intention of ever allowing plaintiff to derive any material financial benefit from said proffered ownership status; (b) procure, devise and transmit a fraudulent valuation of a minority share in the company;  (c) belatedly and fraudulently file a Restated LLC (Partnership) Tax Return for 2008, eliminating plaintiff ZAYTSEV as a member, and thereby contending that plaintiff submitted false documentation when he filed his K-1 over a year earlier; (d) conceal their use of plaintiff's work, while at the same time enjoying financial benefits from said use; (e) in violation of 18 U.S.C. §1341, mail a false statement that unlawfully eliminated and extinguished plaintiff's minority share in the ownership of STANACARD, LLC and (f) generally, conceal the pattern of racketeering activity from plaintiffs, and the public.

145.    Defendants, and each of them, were associated with the enterprise, and conducted or participated in the enterprise's affairs through a pattern of racketeering activity in violation of the provisions of 18 U.S.C. §1962(c) or (d). Other victims of the enterprise include Aleksandr Palatkevich, Igor Balk, Constantin Filin, and Vladimir Rivkin.

146.    As a result of the foregoing acts of racketeering by defendants, plaintiffs were damaged in their business and property. Said damage was committed and rendered by all defendants, and by virtue of their association and commingling, it is respectfully requested that

the Court pierce the corporate / limited liability veil with respect to each of the defendant

entities.

147.    Wherefore, the plaintiffs request that judgment be entered in its favor against all

defendants for the following relief pursuant to 18 U.S.C.§1964(c): an award of damages to be

determined at trial and then trebled; the costs of bringing this suit; reasonable attorneys' fees;

and such other and further relief as this Court deems just and proper.

### As and For a Seventh Cause of Action

### CIVIL RICO (WIRE FRAUD) AGAINST ALL DEFENDANTS

148.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in

paragraphs "1" through "147," with the same force and effect as if set forth at length herein.

149.    Defendants, and each of them, devised or intended to devise, a scheme or artifice

to defraud Plaintiffs and in doing so, used interstate telephone and telefax lines, cellular phones

and internet / email transmission to (a) induce plaintiff to sign a Joinder to the STANACARD,

LLC Agreement by stating that he was being given a ten-percent ownership interest in the

company, when defendants had no intention of ever allowing plaintiff to derive any material

financial benefit from said proffered ownership status; (b) procure, devise, and transmit a

fraudulent valuation of a minority share in the company;  (c) secretly and with intent to defraud,

distribute plaintiff's work, while contending that they had no use for his financial services; (d)

conceal their use of plaintiff's work, while at the same time enjoying financial benefits from said

use; (e) in violation of 18 U.S.C. §1341, mail a false statement that unlawfully eliminated and

extinguished plaintiff's minority share in the ownership of STANACARD, LLC and (f)

generally, conceal the pattern of racketeering activity from plaintiffs, and the public.

150.    Defendants, and each of them, were associated with the enterprise, and conducted or participated in the enterprise's affairs through a pattern of racketeering activity in violation of the provisions of 18 U.S.C. §1962(c) or (d). Other (predicate) victims of the enterprise include Aleksandr Palatkevich, Igor Balk, Constantin Filin, and Vladimir Rivkin.

151    As a result of said racketeering activity, plaintiffs were damaged in their business and property. Said damage was committed and rendered by all defendants, and by virtue of their association and commingling, it is respectfully requested that the Court pierce the corporate / limited liability veil with respect to each of the defendant entities.

152.    Wherefore, the plaintiffs request that judgment be entered in their favor against all defendants for the following relief pursuant to 18 U.S.C.§1964(c): an award of damages to be determined at trial and then trebled; the costs of bringing this suit; reasonable attorneys' fees; and such other and further relief as this Court deems just and proper.

### As and For an Eighth Cause of Action

### CIVIL RICO (Money Laundering) AGAINST ALL DEFENDANTS

153.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "152," with the same force and effect as if set forth at length herein

154.    Defendants, and each of them, engaged in a conspiracy in violation of 18 U.S.C. §1956 (relating to the laundering of monetary instruments), by knowingly using the proceeds from the fraudulently-induced use of plaintiffs' credit history to reinvest in the defendants' ongoing business concerns and, more frequently, to willfully, knowingly and fraudulently, expense personal items such as residence rental fees, personal travel expenses, clothing, jewelry,

including an engagement ring, and other material purchases, as business expenses by charging them on company cards, for which plaintiff ZAYTSEV was personally liable.

155.    Defendants, and each of them, engaged in a conspiracy in violation of 19 U.S.C. §1957 (relating to engaging in monetary transactions in property derived by specified unlawful activity) by knowingly engaging or attempting to engage in a monetary transaction in criminally derived property of a value greater than $10,000, which property was commingled among the defendant entities, and also transported without the United States.

156.    Defendants, and each of them, were associated with the enterprise, and conducted or participated in the enterprise's affairs through a pattern of racketeering activity in violation of the provisions of 18 U.S.C. §1962(c) or (d). Other (predicate) victims of the enterprise include Aleksandr Palatkevich, Igor Balk, Constantin Filin, and Vladimir Rivkin.

157.    As a result of said racketeering activities, plaintiffs were damaged in their business and property. Said damage was committed and rendered by all defendants, and by virtue of their association and commingling, it is respectfully requested that the Court pierce the corporate / limited liability veil with respect to each of the defendant entities.

158.    Wherefore, the plaintiffs request that judgment be entered in its favor against all defendants for the following relief pursuant to 18 U.S.C.§1964(c): an award of damages to be determined at trial and then trebled as authorized by the Copyright Act; the costs of bringing this suit; reasonable attorneys' fees; and such other and further relief as this Court deems just and proper.

### As and For a Ninth Cause of Action

**SLANDER – AGAINST DEFENDANTS CHOUPAK AND KOROLEVA ONLY**

159.     Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "158" above, with the same force and effect as if set forth at length herein.

160.     The actions of defendant MICHAEL CHOUPAK and ANASTASIA KOROLEVA in terminating plaintiffs from their employment at STANACARD, LLC, and their extinguishment of plaintiff ZAYTSEV's minority ownership interest in the company, was designed to harm plaintiff personally, professionally and financially. Moreover, said actions were done in a manner that was uncivil, calculated and malicious.

161.     Upon information and belief, defendants CHOUPAK and KOROLEVA were criticized by a number of individuals for their treatment of plaintiff ZAYTSEV. After plaintiff filed his lawsuit in New York State court against STANACARD, defendants CHOUPAK and KOROLEVA began a campaign to discredit ZAYTSEV.

162.     At a personal meeting in the Russian Vodka Room in New York City, defendant MICHAEL CHOUPAK was told by Alexander Gellerman that his conduct toward plaintiffs was wrongful, rude and uncivil, particularly given the length of time that CHOUPAK and ZAYTSEV were close personal friends and the fact that the firing occurred when ZAYTSEV's wife was pregnant. Gellerman also stated that, "You need to talk to them. You don't fire people over email." In response, CHOUPAK replied that, "You do not know everything. It's not what it seems. Artur was stealing from me, and from the company." Said statements by CHOUPAK were knowingly false and malicious, and constituted slander.

163.     Also in New York, defendant MICHAEL CHOUPAK told Vaho Khoutsishvili, a former investment banker with JP Morgan Chase Bank, N.A., that plaintiff ZAYSTEV "stole

from the company, and from my personal accounts." Said statements by CHOUPAK were knowingly false and malicious, and constituted slander.

164.    While in Russia, defendant MICHAEL CHOUPAK told a friend by the name of Yan E. Yanovskiy that he fired ZAYTSEV because, "he was stealing from STANACARD. I had to fire him." Such statements constituted slander. The comments to Yanovskiy were repeated to New York-based business contacts of plaintiffs, including Irina Zavina.

165.    Defendant ANASTASIA KOROLEVA had a conversation in London with her law school classmate, Anna Smorodskaya, about the circumstances surrounding plaintiffs' termination from STANACARD, LLC. Defendant KOROLEVA falsely and maliciously reported about ZAYTSEV that he, "[S]tole from the company, and from us personally." The statements were eventually circulated in New York, among friends, colleagues, business associates and acquaintances of plaintiffs.

166.    The aforesaid statements of defendants CHOUPAK and KOROLEVA were made with knowledge of their falsity. They were made in a deliberate attempt to discredit plaintiff ZAYTSEV, to isolate him from the Russian immigrant community in New York City, and to impair plaintiff's ability to earn income by destroying his reputation, and that of his company, ANZFS, INC.

167.    Plaintiffs were damaged thereby, in their reputation, business and property.

168.    Said damage was sustained without any actions on the part of plaintiffs contributing thereto, insofar as defendants' statements were entirely false and without merit.

169,    Based upon the slander as described above, plaintiffs were damaged in the sum of Twenty Five Million ($25,000,000.00) Dollars, and demand judgment for same or such amount as may be set by a jury following the trial of this action, together with punitive damages, interest,

costs, disbursements, attorneys' fees, and such other and further relief as this Court deems just and necessary.

## As and For a Tenth Cause of Action

### FOR AN EQUITABLE ACCOUNTING OF THE BOOKS, RECORDS AND ACCOUNTS OF ALL DEFENDANTS AND FOR SPECIFIC PERFORMANCE

170.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "169,"  with the same force and effect as if set forth at length herein.

171.    Based upon the foregoing, it is respectfully requested that the court issue judgment directing an equitable forensic accounting of the books, records and accounts of all defendants, and further, that the court supervise and administer said accounting.

172.    Further, plaintiff ARTUR NATAN ZAYTSEV respectfully requests and demands that, following said forensic accounting, a fair share valuation be rendered and paid with respect to his ten-percent ownership interest in STANACARD, LLC. The payment for said valuation is sought against each of the defendants herein, by virtue of their association and commingling and the court is respectfully asked to pierce the corporate / limited liability veil of the defendant entities.

173.    Wherefore, it is respectfully demanded that an equitable accounting and fair valuation be adjudged, in favor of plaintiff ARTUR NATAN ZAYTSEV, and that a declaratory judgment be issued directing specific performance of an equitable buyout of said plaintiff's shares by defendants, and each of them.

## As and For an Eleventh Cause of Action

**UNJUST ENRICHMENT – AGAINST ALL DEFENDANTS**

174.   Plaintiffs repeat, reiterate and reallege each and every allegation contained in paragraphs "1" through "173" with the same force and effect as if set forth at length herein.

175.   Plaintiffs conferred a key benefit on STANACARD, LLC in the form of services performed as a consultant to, and officer and owner of, STANACARD, LLC. Plaintiff ARTUR NATAN ZAYTSEV was to be compensated for said benefit, in part, through a ten (10%) percent ownership share in the company.

176.   Defendants, and each of them, acquired said benefit and wrongfully conveyed it to other entities and parties in which they held a financial interest, without any compensation to plaintiffs for such use. Such conveyance constituted conversion.

177   By reason of its unauthorized use of plaintiffs' financial software / code / modeling program, defendant INTERMEDIA NET, INC., has been unjustly enriched.

178.  By reason of its unauthorized use of plaintiffs' financial software / code / modeling program, defendant UNISON TECHNOLOGIES, INC. has been unjustly enriched.

179.  By reason of its unauthorized use of plaintiffs' financial software / code / modeling program, defendant STANACARD, LTD. has been unjustly enriched.

180.  By reason of its unauthorized use of plaintiffs' financial software / code / modeling program, defendant KEKU, LLC has been unjustly enriched.

181.  Said unjust enrichment benefitting defendants has devalued plaintiff ZAYTSEV's interests in STANACARD, LLC, and has also damaged the business and property of both plaintiffs.

182.  Said plaintiffs have no adequate remedy at law, absent a declaratory judgment

entitling them to a fair value portion of the assets of STANACARD, LLC, INTERMEDIA NET, INC., UNISON TECHNOLOGIES, INC., KEKU, LLC and STANACARD, LTD.

183.  A portion of the monetary profits constituting the unjust enrichment passed through the books and accounts of VICTORIAN MANAGEMENT, LLC, as well as INTERMEDIA NET, INC., UNISON TECHNOLOGIES, INC., KEKU, LLC. From said accounts, the sums were eventually disbursed to defendants, MICHAEL CHOUPAK, ANASTASIA KOROLEVA and EDUARD ROMANOV.

184.   As a result of the foregoing, plaintiffs seek judgment accordingly, to wit: for an accounting and inspection of the operational software, books, internal memoranda, tax returns, profit loss and revenue statements, and all other forensic financial data, of STANACARD, LLC, STANACARD, LTD, KEKU, LLC, INTERMEDIA NET, INC., UNISON TECHNOLOGIES, INC., VICTORIAN MANAGEMENT, LLC, MICHAEL CHOUPAK, ANASTASIA KOROLEVA and EDUARD ROMANOV, and for disgorgement of all profits derived from their unjust enrichment at the expense of plaintiffs, together with interest, costs, disbursements, attorneys fees, and any other and further relief as this Court deems just and proper.

## UNIFIED STATEMENT OF RELIEF

185.   As set forth in the preceding paragraphs, plaintiffs are entitled to a judgment against the defendants jointly and severally, for actual, compensatory, punitive and consequential damages, including treble damages on the RICO counts, in excess of the jurisdictional limit of this Court, together with costs, disbursements, reasonable attorney's fees, pre-and post-judgment interest at the legally allowable limit, and such other and further relief as this Honorable Court deems just and proper.

## <u>DEMAND FOR JURY TRIAL</u>

186.    Plaintiff demands a trial by jury of any issues so triable.

Dated: Troy, New York
       February 29, 2012

                              Respectfully submitted,

                              PATTISON, SAMPSON, GINSBERG & GRIFFIN, P.C.


                                  /s/
                              _____
                              By Eileen T. Rohan, Esq. (ER5623)
                              22 First Street
                              PO Box 208
                              Troy, New York 12181-0208
                              (518) 266-1000 (phone)
                              (518) 266-1025 (direct)
                              (518) 274-6034 (fax)
                              rohan@psgglaw.com